IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLISON TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-2602 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RADICAL FIREARMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants have brought counterclaims against Plaintiff for breach of contract and breach of warranty. Before the Court is Plaintiff's partial motion to dismiss [16] these counterclaims. For the reasons set forth below, Plaintiff's motion to dismiss is granted without prejudice, with leave for Defendants to file amended counterclaims by December 9, 2019. The case is set for further status hearing on December 18, 2019 at 9:00 a.m.

**I.      Background[1]**

Plaintiff Ellison Technologies brought a breach of contract suit against Defendant Radical Firearms. Defendant is a gun manufacturer that also sells its firearms. [5, § IV, ¶ 1.] Defendant had a years-long business relationship with Plaintiff, from which Defendant has purchased various machines. [*Id.*, ¶¶ 2–3.] For example, in 2015 alone, Defendant purchased $1.5 million worth of machines from Plaintiff. [*Id.*, ¶ 2.] This dispute centers around Defendant's purchase of a VC3600 machine pursuant to a purchase agreement ("Contract") signed in March 2018. [*Id.*, ¶ 3.] The Contract contained a provision limiting Plaintiff's liability. It reads in full:

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Defendant's (*i.e.*, the non-movant's) well-pleaded factual allegations and draws all reasonable inferences in Defendant's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

13. **Limitation on Liability**. Seller's aggregate liability under this Order Contract shall not exceed the purchase price paid by Buyer for the Products. In no event will Seller be liable for any indirect, consequential, incidental or punitive damages of any kind from any cause arising out of or related to the products or their installation or the use or inability to use any of the products, including without limitation, loss of profits, loss of use, or business interruption. [5-1, ¶ 13.]

Of the $200,000 total cost for the VC3600, Defendant paid 20% ($40,000) up front. [5, § IV, ¶ 6.] The remainder was covered by Plaintiff's in-house financing company, Manufacturers Financing Services (MFS). [*Id.*] According to Defendant, the VC3600 did not meet the contractual specifications, and there were deficiencies in Plaintiff's installation of the machine. [*Id.*, ¶ 10.] Consequently, Plaintiff breached the Contract by failing to have the machine "up and running as of the agreed upon date of April 19th." [*Id.*, ¶ 11.] After trying to get Plaintiffs to fix the nonconformity of the goods, Defendant rejected the VC3600 and returned the machine to Plaintiff. [*Id.*, ¶¶ 12–16.] Upon return of the VC3600, Plaintiff refunded MFS the $160,000 it contributed to financing, but MFS charged Defendant a "pre-payment penalty" of $9,442.66. That penalty, plus Defendant's non-refundable down-payment, left Defendant "out of pocket $49,442.66 [in] actual damages." [*Id.*, ¶¶ 17-18.] Defendant further alleges that it had to pay "the costs of rigging and other actual damages associated with the installation and troubleshooting of the VC3600" and "lost profits" due to not having an operational VC3600 machine when it expected it. [*Id.*, ¶¶ 18, 20.] Defendant does not put a price on the costs of rigging and troubleshooting the malfunctioning VC3600, but it claims lost profits of $326,000. [*Id.*, ¶ 20.]

Plaintiff filed suit in Illinois state court seeking damages for breach of contract, or in the alternative, declaratory judgment that Defendant's damages be capped at $40,000 should Plaintiff be found to be the breaching party.[2] See generally [1-1]. Defendant removed the case to federal

---

[2] The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). First, the amount in controversy, as determined by the face of the complaint, exceeds $75,000. Indeed, Plaintiff acknowledges that damages could very well mount into the six-figures if it is not granted relief. See [1-1, ¶ 29]. And the litigants are

court [1] and counterclaimed seeking damages for breach of contract [5, § IV, ¶¶ 21–26] and breach of warranty [*Id.*, ¶¶ 27–30]. Before the Court is Plaintiff's partial motion to dismiss Defendant's counterclaims [16] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff seeks dismissal insofar as the counterclaims recite damages greater than those allowed by the Contract's Limitation on Liability section. [*Id.*]; see also generally [17].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "Where those

---

diverse: Plaintiff is a Delaware corporation with a principle place of business in Illinois, and Defendant is a Texas citizen. [1, ¶¶ 11-12.]

allegations are contradicted by written exhibits that [plaintiff] attached to his * * * complaint, however, the exhibits trump the allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

III.    Analysis

The Uniform Commercial Code, as codified in Illinois statutes (hereinafter, "the Code"), allows contractual modification for "Limitation of Remedy." See generally 810 ILCS 5/2-719; see also U.C.C. § 2-719. A contract "may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts." 810 ILCS 5/2-719(1)(a). But such contractual modifications limiting actual damages will not be enforced when "circumstances cause an exclusive or limited remedy to fail of its essential purpose." 810 ILCS 5/2-719(2). That said, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." 810 ILCS 5/2-719(3). Finally, the comment to this section explains that "it is of the very essence of a sales contract that at least minimum adequate remedies be available." 810 ILCS 5/2-719, cmt. 1. In sum, agreements to limit damages are generally enforceable, unless (1) circumstances undermine the essential purpose of the limitations on actual damages; (2) terms limiting consequential damages are unconscionable; or (3) the damages cap is less than a minimum adequate remedy for the victim of a breach.

Plaintiff argues that because the contract's express terms limit damages to the purchase price paid by buyer and the Code permits limitation of remedy, any claim on the contract must be

4

capped at $40,000 (the amount Defendant paid as part of the purchase price). Defendant counters that (1) the contract term eliminating consequential damages was unconscionable; (2) the contract term limiting liability to purchase price paid failed in its essential purpose; (3) these caps do not provide a minimum adequate remedy; and (4), in the alternative, that it is entitled to other payments made in connection with the purchase of the VC3600. These arguments are addressed in turn.[3]

**First**, Defendants have not adequately pled that the Contract's limit on consequential damages is unconscionable.[4] In accordance with the Code, which provides that "[c]onsequential damages may be limited or excluded" 810 ILCS 5/2-719(3), the Contract provided that Plaintiff will not "be liable for any indirect, consequential, incidental or punitive damages." [5-1, § 13.] Under the Code, this bar is only invalid if it is unconscionable, and there is no presumption of unconscionability. 810 ILCS 5/2-719(3); see also *Razor v. Hyundai Motor America*, 222 Ill.2d 75,

---

[3] An overarching theme in Defendant's motion is that most of these claims cannot be decided on a Rule 12(b)(6) motion to dismiss because they implicate factual concerns. This argument misreads the legal standard for dismissing a complaint for failure to state a claim, described in detail above. Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. As explained below, Defendant's spare counterclaim does not allege any facts which, taken as true, would support its claims regarding the unenforceability of the contract. At present, there is no factual dispute necessitating discovery, evidentiary hearings, or a trial before a fact finder, because Defendant has not pled "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); see also *Acoustical Surfaces, Inc. v. Vertetek Corp.*, 2014 WL 3452986, at *1 (N.D. Ill. July 15, 2014) (counterclaims must satisfy FRCP pleadings standards). Furthermore, should Defendant choose to amend its counterclaim, it should bear in mind that "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

[4] Ironically, Defendant alleges that the Contract was "a valid and enforceable contract." [5, § IV, ¶ 22.] If that is true, then Defendant's entire counterclaim is moot: Since the limitation on liability is part of a "valid and enforceable contract," the logic of Defendant's allegation is that the Court simply should enforce that valid provision. The enforceability of contracts, however, is a legal conclusion, and thus the allegation in ¶ 22 need not be taken as true for the purposes of a Rule 12(b)(6) motion to dismiss. And in any event, removal of this offending allegation will not save Defendant's counterclaims given the absence of adequate affirmative allegations.

92–95 (2006). [5] Unconscionability has procedural and substantive components. "Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Razor*, 222 Ill.2d at 100. And procedural unconscionability "takes into account a lack of bargaining power," among other factors. *Id.* Courts accordingly consider "the relationships between and relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to [the nonbreaching party]." *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, 155 F. Supp. 3d 772, 795 (N.D. Ill. 2016) (reviewing various states' approaches to this UCC section and denying motion to dismiss because plaintiffs properly pled facts from which unconscionability could be inferred). When a party does not plead any factual matter from which a court can infer that a limit on consequential damages is unconscionable, dismissal is warranted. Compare, *e.g.*, *Darne v. Ford Motor Company*, 2015 WL 9259455, *7 n.9 (N.D. Ill. Dec. 18, 2015) (concluding that the sufficiency of allegations of unconscionability should be determined at the motion to dismiss stage); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1372 (N.D. Ill. 1996) (dismissing complaint when plaintiff failed to allege facts supporting unconscionability defense), with *Prairie River Home Care, Inc. v. Procura, LLC*, 2019 WL 3021253, *10–11 (D. Minn. July 10, 2019) (distinguishing *Lefebvre* and denying motion to dismiss when plaintiff alleges facts indicative of unconscionability).

---

[5] Defendant's discussion of this legal authority is not altogether coherent, but it cites to a line of cases calling for a "case-by-case" approach to analyzing limitations of liability in contracts under 810 ILCS 5/2-719. [25 at 7–8 (citing *Global Link Communications, Inc. v. Homisco, Inc.*, 1998 WL 774981, *6 (N.D. Ill. Oct. 27, 1998) (discussing *Smith v. Navistar Intern. Transp. Corp.*, 957 F.2d 1439, 1445 (7th Cir. 1992); *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th. Cir. 1978)).] The problem is that Illinois courts have expressly disavowed that approach and the cases underlying the *Global Link* opinion. *Razor*, 222 Ill.2d at 90-92 (criticizing *AES* and *Smith*, explicitly declining to adopt their approach, and instead holding that only unconscionable limitations on consequential damages are invalid). Defendant seemingly acknowledges this fact, citing to *Razor* immediately after discussing *AES*. See [25 at 8].

Defendant does not allege anything from which the Court can infer that this contract was unconscionable. In fact, all well-pled facts support the opposite inference: Defendant concedes that it had been in business for years before signing the Contract [5, § IV, ¶ 1]; that it had a long-standing relationship with Plaintiff and had bought at least $1.5 million in machines from it [*id.*, ¶¶ 2–3]; that it negotiated the Contract [*id.*, ¶4]; and that it was able to obtain "an alternative machine" soon after breach became apparent [*id.*, ¶ 19]. These allegations suggest that bargaining power between the parties was not so unequal as to preclude negotiations, and alternatives were available. Defendant also points to § 3 of the contract, which specifies that Plaintiff's terms control, to show that the limitation on consequential damages was unconscionable. See [25 at 9 (citing 5-1, § 3)]. But this narrow focus on a single paragraph ignores both Defendant's own allegations in its complaint that it had "negotiations" with Plaintiff [*id.*, ¶ 4], and the first page of the contract, which shows that Defendant received a discount. See [5-1 at 2]. Moreover, Defendant has not cited any authority that a tie-breaker provision, viewed in isolation, is so unreasonable as to render the entire contract unconscionable.

**Second**, the Defendant has not pled sufficient factual matter showing that the limitation of damages has failed of its essential purpose. Limitations of non-consequential damages are valid unless "circumstances cause an exclusive or limited remedy to fail of its essential purpose." 810 ILCS 5/2-719(2); see also *Razor*, 222 Ill.2d at 93. Generally speaking, a limitation of liability fails of its essential purpose when circumstances change and breach is of a character not envisioned by the contract. *E.g.*, *Interlake Packaging Corp. v. Strapex Corp.*, 842 F. Supp. 304, 307 (N.D. Ill. 1993) ("That is, the essential purpose of every limited remedy is, at core, to provide a remedy for the type of breach(es) envisioned by the parties in agreeing to the limited remedy."). Many of the cases in which a remedy failed of its essential purpose involved contracts that limit liability to the

repair or replacement of non-conforming goods. *Id.*; see also *Razor*, 222 Ill.2d at 93 (suggesting that a seller's inability to repair or replace is the quintessential example of a limitation's failure of its essential purpose). Such limitations can be especially problematic when the seller then refuses to (or cannot) replace or repair the goods—the (normally adequate) remedy of replacement has failed of its essential purpose, because the seller's continued breach has deprived the buyer of *any* remedy. *Razor*, 222 Ill.2d at 93; *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 965 (N.D. Ill. 2000) (finding that limitation on liability failed of its essential purpose when damages were limited to repair and replacement and seller failed to repair or replace defective product within a reasonable time); see also *Petri Paint Co., Inc. v. OMG Americas, Inc.*, 595 F. Supp. 2d 416, 422–3 (D. N.J. 2008) (explaining that limitations of liability to replacement and repair in contracts for machines are generally enforceable, unless the defective or mislabeled machines caused unforeseeable harm). Similarly, consumer contracts that limit liability to purchase price may fail of their essential purpose when the seller sells a latently defective product. *Rust-Oleum*, 155 F. Supp. 3d at 789–90 (reviewing case law from multiple jurisdictions). For example, in *Rust-Oleum*, buyers bought a product that was intended to preserve wooden decks but had a latent defect that caused it to ruin users' decks; the warranty in question limited damages to the purchase price of the product. *Id.* at 781-83. The latency of the defect was particularly important, because buyers were unable to detect seller's breach of warranty until too late: they used the harmful product, at which point removal became costly or impossible. *Id.* at 790–91 (collecting cases from multiple jurisdictions). Because the *Rust-Oleum* plaintiffs had alleged latency, they adequately pled facts from which the court could conclude that the refund remedy failed of its essential purpose. *Id.*

      Here, however, Defendant has not pled anything regarding a change in circumstances or undermined expectations. Unlike in *Jones*, Defendant has other remedies beyond repair and

replacement—it is entitled to its money back. [5-1, § 13.] And unlike in *Rust-Oleum*, the defect was not latent, and Defendant does not plead that the types of damages it incurred were fundamentally different than those contemplated by the limitation on liability. Indeed, far from arguing that the VC3600 was latently defective, Defendant's pleading suggests that the defects in the VC3600 were immediately apparent. See [5, § IV, ¶¶ 10–11]. The closest Defendant comes to pleading that its damages were of a different nature than those contemplated at the time of sale is an allegation that it had to pay rigging costs and "other actual damages associated with the installation and troubleshooting of the VC3600." [*Id.*, 18.] But the former is explicitly contemplated in the contract [5-1 at 2] and the Court cannot infer from Defendant's conclusory reference to "other damages" that these represent changes in circumstances entitling Defendant to its requested relief.

Defendant's further arguments on this point are difficult to parse, but it seems to argue that *any* breach is a change in circumstances that causes a limitations provision to fail of its essential purpose. [25 at 10 ("To put it more clearly, the entire purpose—e.g. the *essential purpose*—of a limitation of remedy clause is to encourage the seller to tender conforming good and the buyer to pay the agreed-upon purchase price.").] That cannot be correct, for if *any* breach renders a limitation on liability unenforceable, the exception swallows the rule. Moreover, limitations on damages *lower* the cost of breach, making breach *more* likely. And, there were ample other contract provisions that disincentivized Plaintiff from breaching: for example, Plaintiff covered the cost of shipping the VC3600 from Long Beach, CA to Stafford, TX [5-1 at 2].

**Third**, the Defendant has not adequately pled that the Contract lacks a minimum adequate remedy.[6] The commentary to the Code explains that "it is of the very essence of a sales contract

---

[6] Most courts examine the "minimum adequate remedy" as a component of the "essential purpose" inquiry. See, *e.g.*, *Rothbaum v. Samsung Telecommunications America, LLC*, 52 F. Supp. 3d 185, 205 (D. Mass.

that at least minimum adequate remedies be available" and that there be "a fair quantum of remedy for breach of the obligations or duties outlined in the contract." 810 ILCS 5/2-719, cmt. 1. Defendant then cites Judge Posner's admonition that "[t]he UCC disfavors disclaimers that leave the victim of a breach of contract without *any* remedy." *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 611 (7th Cir. 1993) (emphasis added); see also [25 at 10]. But Defendant does not acknowledge the following qualification: "[The UCC] does not disfavor limit[s on] … the measure of damages recoverable, and gives the specific example of limiting a buyer to recovery of the price." *Id.* (alterations in original, citations and quotation marks omitted). This at least suggests that a damages cap is minimally adequate. In any event, Defendant has not pled any facts or cited any authority from which the Court could infer that this damages cap—endorsed by statute and the Seventh Circuit—is not, at the very least, *minimally* adequate.

**Fourth**, Defendant's alternative arguments that it is entitled to damages up to $200,000 (the total price of the VC3600), or at least the pre-payment penalty of $9,442.66, also fail. The clear terms of the contract limit damages to "the purchase price *paid by Buyer*" not to the *total* purchase price. See [5-1, ¶ 13] (emphasis added). The complaint is also clear that Defendant paid only $40,000 toward the purchase price.[7] [5, § IV, ¶¶ 6–7, 17–18.] Defendant argues that this provision does not make sense, because the provision limits damages to below the level it sustained. [25 at 11.] But Defendant's proposed reading—that it is entitled to money it did not

---

2014). Others consider the two side-by-side, or as related, but not coterminous components. See, *e.g.*, *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 611 (7th Cir. 1993). And, finally, some do not explicitly consider the minimum adequacy of a remedy when determining whether a limitation failed of its essential purpose. See, *e.g.*, *Rust-Oleum*, 155 F. Supp. 3d at 790–91 (collecting cases from multiple jurisdictions). The Court here considers them separately to clarify that even if they are separate inquiries, Defendant's pleading is insufficient.

[7] The complaint lists other fees paid to MFS [*id.*, ¶¶ 8–9], but Defendant later clarifies that these were not "out of pocket" expenses that should be included along with damages. [*Id.*, ¶ 18.]

pay and was in fact refunded to a third party—contravenes the express terms of the contract, which must "trump" any allegations made in the complaint, *Abcarian*, 617 F.3d at 933; [5-1, § 13].

Finally, Defendant seeks the $9,442.66 that it paid to Plaintiff's financing arm, MFS. Taking as true that Defendant paid this sum to Plaintiff's financing company, the Court still cannot plausibly infer that Defendant is entitled to the fee as part of the purchase price under § 13 of the contract. Defendant states that this fee was a "pre-payment penalty" that was assessed *after* Plaintiff "refunded to MFS 80 percent of the $200,000 purchase price, which MFS financed." [5, § IV, ¶17.] Based on these allegations, it appears as though the fee was not paid as part of the purchase price (and thus recoverable under the contract) and is instead associated with the *return* of the VC3600. Moreover, the Contract appended to Defendant's counterclaim barely references financing and, as far as the Court can tell, makes no mention of pre-payment penalties. The Court must conclude either that this fee is not part of the purchase price or is governed by a separate contract that the Court does not have before it. Either way, Defendant has not adequately pled that it is entitled to this sum.

### IV. Conclusion

For the reasons explained above, Plaintiff's partial motion to dismiss for failure to state a claim [16] is granted and Defendant's counterclaims are dismissed without prejudice insofar as they request damages greater than $40,000. Defendant is granted leave to file amended counterclaims no later than December 9, 2019. The case is set for further status hearing on December 18, 2019 at 9:00 a.m.

Dated: November 12, 2019

_____
Robert M. Dow, Jr.
United States District Judge

11